## IN THE UNITED STATES DISTRICT COURT
## OF THE SOUTHERN DIVISION OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ERIN WADE,** | )( | **Civil Action No. 4:22-cv-1357** |
| **JOSE DONIS,** | )( | **(Jury Trial)** |
| **ERNEST ALUMANAH,** | )( | |
| **MAXSTAR SICINIO MCDONALD,** | )( | |
| **LORENZO VAUGHN JOHNSON JR.,** | )( | |
| **VICTORIA GARCIA,** | )( | |
| **NICHOLAS NABORS,** | )( | |
| **EMILY PAYTON,** | )( | |
| **BRISENIA FLORES, and** | )( | |
| **JANIE TORRES,** | )( | |
| | )( | |
| *Plaintiffs,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **CITY OF HOUSTON, TEXAS;** *et al.,* | )( | |
| | )( | |
| *Defendants.* | )( | |

## PLAINTIFFS' 1st AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE SENIOR JUDGE KENNEH M. HOYT:**

**NOW COME** Plaintiffs ERIN WADE, JOSE DONIS, ERNEST ALUMANAH, MAXSTAR SICINIO MCDONALD, LORENZO VAUGHN JOHNSON JR., VICTORIA GARCIA, NICHOLAS NABORS, EMILY PAYTON, BRISENIA FLORES, and JANIE TORRES complaining of the CITY OF HOUSTON, TEXAS; and POLICE CHIEF ART ACEVEDO, *Individually,* and will show the Court the following:

## INTRODUCTION

1.      The City of Houston is two-faced when it comes to civil rights. Seemingly embracing civil rights for political theater yet *literally*[1] crushing civil rights when expedient. While the City's top executive officer Mayor Sylvester Turner embraces Janie Torres, sister of Jose Campos Torres who was drown in Buffalo Bayou by Houston police in the 70's, and celebrates for the media the creation of the Jose Campos Torres Plaza in downtown Houston, Turners' officers stomp on Janie's, and hundreds of others, rights to peacefully protest that same type of police misconduct in that same downtown where Jose Campos Torres breathed his last. See

*https://www.houstonchronicle.com/news/houstontexas/houston/article/Torres-Memorial-16708769.php*

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any.

3.      Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incidents at issue took place in Harris County, Texas within the United States

---

[1] Houston police used a "kettling" technique on hundreds of peaceful George Floyd protestors on many occasions by forming a line at both ends of a downtown block then squeezing all peaceful protestors together before handcuffing, jailing, and falsely arresting and maliciously prosecuting them with crimes.

Southern District of Texas.

## **PARTIES**

4.     JOSE DONIS is a resident of Harris County, Texas.

5.     ERNEST ALUMANAH is a resident of Harris County, Texas.

6.     MAXSTAR SICINIO MCDONALD is a resident of Harris County, Texas.

7.     LORENZO VAUGHN JR. is a resident of Harris County, Texas.

8.     VICTORIA GARCIA is a resident of Harris County, Texas.

9.     NICHOLAS NABORS is a resident of Harris County, Texas.

10.     EMILY PAYTON is a resident of Harris County, Texas.

11.     JANIE TORRES is a resident of Harris County, Texas.

12.     BRISENIA FLORES is a resident of Wharton County, Texas.

13.     The CITY OF HOUSTON, TEXAS, is a municipality existing under the laws of the State of Texas and situated mainly in Harris County, Texas in the U.S. Southern District of Texas and can be served with process by serving the City Secretary at 901 Bagby Street, Houston, Texas.

14.     POLICE CHIEF ART ACEVEDO, *individually,* is a resident of Harris County, Texas and can be served with process wherever he is found.

## **FACTS**

15.     Erin Wade (hereinafter, sometimes "Erin" or "Plaintiff"), 35, works for the United States Post Office. Save for the false arrest cited herein Erin has never been arrested, nor convicted, of any crime in her entire life.

16.     Erin spends his spare time feeding the homeless, volunteering to help the mentally ill, and gathering clothing donations for less financially fortunate children.

17.     Erin was in downtown Houston May 30, 2020 protesting the death of Houston native George Floyd who was murdered by a Minneapolis police officer and other police misconduct. Erin was chanting about George Floyd and police misconduct and marching with fellow protestors. Erin was by the Houston Ballet with some other protestors when the Houston police starting firing rubber bullets at the protestors.

18.     Erin was acting peacefully at the time and had committed no crime. He was not blocking any roadway or committing any crime.

19.     The police then kettled Erin and many other protesters and arrested them for obstructing a roadway.

20.     Erin was taken via Metro bus to the Houston Police Riesner Street jail gym, placed in a pen and phones taken.

21.     Eventually, Erin was taken to Harris County jail by Houston police and kept for around 30 hours.

22.    During this time period Erin was given no food nor water.

23.    Erin was let out on bond. Erin's case was dismissed after a couple weeks without having to pay a fine or fulfill any obligation.

24.    Erin suffered at least depression and anxiety due to actions of the Houston police.

25.    Erin very much wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the actions of the officers and threats of future charges by the Houston police officers and what had just happened.

26.    Even if Erin does peacefully protest in the future Erin may limit the method or duration of protest and will likely be frightened of false arrest and excessive force by HPD.

27.    Domingo Herrera (Domingo) is a hero having received his own "day" by a City of Houston proclamation for capturing a knife-wielding thief who had just stabbed a woman and stole her purse August 25, 2018. June 2, 2020 Domingo was peacefully protesting in downtown Houston on a sidewalk concerning the killing of Houston native George Floyd by a Minneapolis police officer and other police misconduct matters. Domingo was committing no crime and was filming the events, with many other protesters, and chanting slogans. Domingo was acting peacefully and not blocking a roadway or sidewalk. A large group of Houston police officers

(sometimes "HPD") in riot gear then converged on the protesters, including Plaintiff, and pushed them against their will into a small space. Domingo requested of the Houston police officers several times to leave but an unknown Houston police officer told Domingo he was being detained.

28.    Domingo was then grabbed by HPD, his hands were bound with "zip ties" and he was placed on a bus. Many other protestors were also put on the bus and then taken to the Harris County jail. Domingo was held in the Harris County jail for about 24 hours before getting out on a personal recognizance ("PR") bond. One of the requirements of the PR bond was to not commit any crimes otherwise a warrant would be issued for Domingo's arrest. Domingo, therefore, did not return to protest when he desired to do just that.  Domingo very much wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the threats of charges by the HPD officer and what had just happened to him. Even if Domingo does peacefully protest in the future he may limit his method or duration of protest and will likely be frightened of false arrest and excessive force by HPD. Domingo, at some point, found out he was being charged with obstructing a roadway.

29.    On June 9, 2020 hundreds of protesters' obstructing a roadway charges were dropped including Domingo's. Over 700 other peaceful protestors were also charged with obstructing a roadway during the George Floyd protests in late May

2020 and early June 2020 also had their cases dismissed. Dozens, if not hundreds, of these protestors were also arrested by HPD when they had committed no crime.

30.    During the protests Domingo had not obstructed any roadway nor committed any other crime. HPD did have any facts to establish that Domingo had likely committed a crime. Houston City officials, including Chief Acevedo boasted that at the George Floyd protests no significant damages or injuries occurred.

31.    On May 29, 2020 Percy Utley, 36, is an African American male who is a glazer and a father who lives in Houston, Texas went downtown to protest. Percy and some other protestors were at the corner of Rusk and Main at around 10:30 PM when a group of Houston police officers in riot gear told the protestors to "disburse" and to "go home" causing Percy to leave the area. Percy did want to "disburse" or "go home" but wanted to remain with the other protestors and continue with the chanting and talking about the issues associated with the death of George Floyd. There was no legal reason for the Houston police to request "disbursing" or requiring Percy and the other protestors to go home. As Percy was attempting to leave, the group of HPD officers surrounded Percy and other protestors and said they were going to jail. One HPD officer pushed Percy against a wall causing pain.

32.    Percy was handcuffed with a "zip tie" as were many other protestors who had been corralled by the HPD officers. No officer articulated any valid reason for the arrest. Percy was uncertain as to how long he would be in jail so he called his

brother. At some point Percy's brother came to the area and had Percy's vehicle towed at a cost of $150.00. Eventually Percy and other protestors were put in a bus and taken to a makeshift Houston City jail near 61 Reisner in Houston.

33.     At no time that evening did Percy commit any crime nor did he see any of the other protestors commit any crime. All the HPD officers present could see the legal activities of the protestors and the illegal activities of other officers. No HPD officer intervened by words or actions to prevent any of the Unconstitutional action of any other HPD officer.

34.     Percy was let go from the jail at around 5 AM the next morning without any charges. As Percy was being let go an HPD officer stated if Percy came back out again Percy would get new "charges." Percy very much wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the threats of charges by the HPD officer and what had just happened to him. Even if Percy does peacefully protest in the future he may limit his method or duration of protest and will likely be frightened of false arrest and excessive force by HPD.

35.     Days prior to the arrest of Domingo and Percy Houston Police Chief Art Acevedo (Chief Acevedo) took charge of the police response to the George Floyd related protests.

36.     Chief Acevedo is a policymaker for the City in police matters including

the response to George Floyd-related protests. He is the top executive officer of the police department.

37.    Chief Acevedo implemented plans to kettle, arrest, and prosecute individuals who were protesting but had not committed any crime including all Plaintiffs herein as wells as hundreds of other protestors even though they had committed no crime. Chief Acevedo's plans and directions were executed as set forth herein. This includes many separate protest events in late May and early June, 2020.

38.    Chief Acevedo implemented plans to "kettle" protestors together by surrounding protestors, for instance, by having lines of officers on both ends of a Houston block and then move in from both ends until the protestors were forced together regardless if the protestors had committed a crime or not. Many of these protestors, including Herrera, Utley, and the other Plaintiffs herein had committed no crime and there was no reasonable suspicion they had committed a crime.

39.    T. Seagler, J. A. Washington, and B. L. Werking and many other Houston police officers participated in the unlawful detention, false arrest, excessive force and malicious prosecution of many protesters. Each observed the others as well as other Houston police officers unlawfully detain, arrest, prosecute and use excessive force on protestors and had plenty of time to intervene, in some cases hours, but all failed to do so. No Houston police officer reported any other officer for false arrests or unlawful detention.

40.    Janie Torres, 56, was protesting peacefully on the sidewalk May 29, 2020 on Milam in downtown Houston. Janie was not blocking any roadway or sidewalk and non-protestors could easily get by the protestors in any direction as they could for any of the other protest events described in this pleading. Janie would chant phrases concerning the death of George Floyd and justice and march with fellow protestors. The Houston police kettled (surrounded and forced into small area) protesters including Janie without giving instructions to leave and while Janie and others were committing no crime. Janie was arrested and brought to the Houston police gym for detention. Janie was brought to the Harris County jail where she stayed until May 31, 2020 when she bonded out of jail and was required to return to court to face charges for obstructing a roadway as all the other plaintiffs herein. Due to the state of knowledge Covid-19 at the time Janie stayed in her car at her home for at least 14 days due to the kettling and enclosed spaces of the jail and the Houston police gymnasium and lack of proper masking requirements. After two weeks or so Janie's case was dismissed without having to pay a fine or fulfill any obligation. Janie very much wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and wants to do so at future peaceful protests, but did not and likely will not based upon the threats of charges by the HPD officers and what had just happened to her. Even if Janie does peacefully protest in the future she may limit her method or duration of protest and will likely be

frightened of false arrest and excessive force by HPD. Janie has suffered anxiety, depression and other mental anguish due to HPD's actions.

41.    Brisenia Flores, 18, was protesting peacefully on a downtown Houston sidewalk on Milam by marching and taking photographs on May 290, 2020 with many other peacefully protestors. Brisenia had never been arrested or convicted of a crime in her life. She was not blocking any roadway or sidewalk and the streets were blocked off. Houston Police kettled (surrounded and forced into small area) protesters including Brisenia without giving instructions to leave and while Brisenia and others were committing no crime. Brisenia and those around her were given orders by the Houston police to stay on sidewalk and they complied, however, they were arrested and jailed any way. Brisenia's  was exposed to Covid-19 by the close quarters and that police had taken masks away from her and she was put into large close-quartered crowds when she detained. Brisenia was put into zip ties for around nine hours which cut off her circulation and to this day she has numbness. Brisenia was falsely charged with obstruction of a roadway, however, she did not obstruct a roadway or sidewalk and she was jailed. Brisenia was eventually let out of jail after 22 hours on bond but had to return to court while the charges pended. After about two weeks Brisenia's case was dismissed without having to pay a fine or fulfill any obligation. Brisenia has suffered anxiety, depression and other mental anguish due to HPD's actions.

PLAINTIFF'S 1st AMENDED ORIGINAL COMPLAINT                    Page 11

42.    Emily Payton, 43, was protesting peacefully on a downtown Houston sidewalk on Milam by chanting slogans regarding police actions and marching May 30, 2020. Houston Police teargassed and kettled (surrounded and forced into small area) protesters including Emily without giving instructions to leave and while Emily and others were committing no crime. Emily and her group were given orders by the Houston police to stay on sidewalk and Emily and the others complied, however, they were arrested and jailed any way. Emily's mask to prevent Covid-19 was taken from her and she was put into large close-quartered crowds when she detained. Emily suffers from arthritis and the police handcuffed her too tightly causing numbness as the cuffs cut off circulation. A female officer named Daniel cut Emily out of her ziptie cuffs with a personal pocket knife and cut Emily's arm in the process. Her fingers were numb and painful for several days after protest. Emily was falsely charged with obstruction of a roadway, however, she did not obstruct a roadway or sidewalk and she was jailed. Emily was eventually let out of jail on bond but had to return to court while the charges pended. After about two weeks Emily's case was dismissed after a few couple of weeks without having to pay a fine or fulfill any obligation. Emily very much wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and wants to do so at future peaceful protests, but did not and likely will not based upon the threats of

charges by the HPD officers and what had just happened to him. Even if Emily does peacefully protest in the future she may limit her method or duration of protest and will likely be frightened of false arrest and excessive force by HPD. Emily has suffered anxiety, depression and other mental anguish due to HPD's actions.

43.    Nicholas Nabors, 33, has never been convicted of any crime in his life. June 2, 2020, around 4-6 pm, Nicholas was by the Hilton in downtown Houston peacefully protesting the death of George Floyd and police misconduct by chanting slogans regarding police misconduct and marching. He was acting as a citizen medic in case someone was injured. Despite committing no crime Houston police arrested and jailed him for obstruction of a roadway. Nicholas did not obstruct a roadway or sidewalk. Nicholas' Covid-19 mask was taken from him and he was put on a bus with many people without masks for 1-1.5 hours. He was taken to a large crowded gymnasium with no Covid-19 preventative measures. Nicholas was jailed for around 24 hours before being let go. The handcuffs were overly tight and he experienced numbness in the hands as well as mental anguish such as anxiety and nightmares. Nicholas observed police chief Art Acevedo at the mass arrest appearing to direct officers in the activities of the illegal detentions and arrests. Nicholas was eventually released from jail and held over on bond and required to return to court. After a couple weeks his case was dismissed without having to pay a fine or fulfill any obligation. Nicholas very much wanted to continue to be with the other like-minded

protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the threats of charges by the HPD officers and what had just happened to him. Even if Nicolas does peacefully protest in the future he may limit his method or duration of protest and will likely be frightened of false arrest and excessive force by HPD.

44    Lorenzo Vaughn Johnson Jr., 25, and his wife Victoria Garcia, 27, who was in a wheelchair, were in downtown Houston peacefully protesting the death of George Floyd and police misconduct by chanting slogan regarding police misconduct and other things and marching May 30, 2020. There were 30-50 Houston police officers who blocked their path, Despite committing no crime they were kettled and arrested for obstructing a roadway. They did not obstruct any roadway or sidewalk. The Houston police were using OC spray and tear gas. Loenzo's and Victoria's masks were taken away and zipties were put on their wrist causing pain. The police took Victoria out of her wheelchair and she reruptured her Achille's tendon causing great pain. They were then bussed via Metro buses to the Houston police gym on Reisner Street. Victoria had a $1200 ER visit due to her injuries. After they were let out of jail on bond they had to return to court to answer for the the charges. After a couple of weeks their cases were dismissed without having to pay a fine or fulfill any obligation. Due to HPD actions they suffered at least pain, injury, depression, increased anxiety, and sleeplessness. Lorenzo and Victoria very much

wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the threats of charges by the HPD officers and what had just happened to him. Even if they Percy do peacefully protest in the future they may limit their method or duration of protest and will likely be frightened of false arrest and excessive force by HPD.

45.    MaxStar Sicinio McDonald, 23, June 2, 2020 was with a group of protesters by Discovery Green in downtown Houston handing out supplies, gloves, mask, sanitizer and snacks and peacefully protesting police misconduct and the death of George Floyd and marching with fellow protestors. MaxStar has never been convicted of any crime in his life. Despite committing no crime MaxStar was kettled with many others by Houston police officers and an HPD officer yanked him down to the ground causing a cut on his elbow. Police did not have their name tags on as per policy and no body worn cameras as per policy. MaxStar was then arrested for obstructing a roadway when he did not obstruct a roadway or sidewalk and having committed no crime. His Covid-19 mask was taken. Maxstar was held in jail for 13 hours before being let out on bond and being required to return to court to answer for the charges. After a couple of weeks MaxStar's case was dismissed without having to pay a fine or fulfill any obligation. MaxStar suffered at least depression, increased anxiety, and sleeplessness. MaxStar very much wanted to continue to be

with the other like-minded protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the threats of charges by the HPD officers and what just happened to him. Even if Maxstar does peacefully protest in the future he may limit his method or duration of protest and will likely be frightened of false arrest and excessive force by HPD.

46.    Ernest Alumanah, 27, was with a group of protesters by in downtown Houston June 2, 2020 peacefully protesting police misconduct and the death of George Floyd and marching with fellow protestors. Ernest has never been convicted of any crime in his life. Despite committing no crime and not obstructing a roadway or sidewalk no crime Ernest was kettled with many others by Houston police officers and arrested for obstructing a roadway. His Covid-19 mask was taken. Ernest was held in jail for 36 hours before he was let out on band and had to return to court to answer for the charges. Houston police never returned his phone, wallet, keys, or any other belongings until 2 months later costing him around $1000.00. He was put in zip ties which were painful and caused his shoulder great pain. After a couple weeks Ernest's case was dismissed without having to pay a fine or fulfill any obligation. Ernest suffered at least depression, increased anxiety, and sleeplessness. Ernest very much wanted to continue to be with the other like-minded protestors and chant slogans and walk in the downtown area, and in future peaceful protests, but did not and will not based upon the threats of charges by the HPD officers and what

had just happened to him. Even if Ernest does peacefully protest in the future he may limit his method or duration of protest and will likely be frightened of false arrest and excessive force by HPD.

47.    Jose Donis, 27, has never been convicted of a crime in whole life. During the time of the George Floyd protests after Floyd's murder (May 25, 2020) Jose was in downtown Houston skateboarding. A large group of protesters ran at him and he tried to get out of the way but an HPD officer grabbed him and threw him to ground. When he asked why he was being detained the officer said "wrong place, wrong time" and that he was going to jail. Earlier he had observed police telling a black man to put his phone away and not to record. At one point an HPD officer asked another HPD officer "What am I supposed to charge him with?" and the other officer said charge him with obstructing a roadway. After Jose was arrested and jailed he bonded out and required to return to court. Jose's case was eventually dismissed without having to pay a fine or fulfill any obligation. Jose suffered at least depression and anxiety due to HPD actions. Jose very much wanted to continue to skate in downtown Houston and be with other skaters, but did not and will not based upon the threats of charges by the HPD officers and what had just happened to him. Even if Jose does skateboard in the future downtown he may limit his method or duration of skateboarding and will likely be frightened of false arrest and excessive force by HPD.

## <u>VIOLATION OF THE 1ST, 4TH, 5TH AND 14TH AMENDMENTS</u>

48.    Plaintiffs incorporate all preceding paragraphs as if set fully set forth herein.

49.    The First Amendment provides, in part, that:

> *Congress shall make no law respecting [] abridging the freedom of speech [] the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

50.    The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

51.    The Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

52.    The Fifth Amendment guarantees everyone the right "to due process of law." The way the City and officer allowed people to be exposed to Covid-19 and the taking away of masks violates the Constitution.

53.    All the above Constitutional violations are actionable pursuant to 42 U.S.C. Section 1983 and 1988.

54.     The City of Houston through policymakers the Mayor, Chief Acevedo and other police hierarchy had a plan to kettle and then arrest the peaceful protestors without reasonable suspicion or probable cause that they committed a crime and then continuing the prosecution making the City liable under *Monell.* Excessive force was used on many protesters without justification. Chief Acevedo personally participated at the illegal detention, arrest and excessive use of force of many protestors where Nicholas Nabors was arrested. The City did not have proper Covid-19 protocols in place despite knowing these issues would arise. Chief Acevedo had time to intervene to prevent these Constitutional violations but he did not, again, causing him to be liable under 42 USC Section 1983. Since Chief Acevedo is a City policymaker the City is liable for these Constitutional violations.

55.     Furthermore, the hundreds and hundreds of unlawful detentions and arrests for many days constitutes an Unconstitutional pattern, practice, custom, and procedure of the City of Houston.

56.     Additionally, police reports and court documents were created which falsely reported Plaintiffs had obstructed a roadway when that was false. This caused the malicious prosecution of the Plaintiffs. These too were a part of Acevedo's and the City's plans.

## **PUNITIVE DAMAGES**

57.     Plaintiffs incorporates all preceding paragraphs as if set fully herein.

Chief Acevedo's actions and inactions cause him to be liable for punitive damages as they were consciously and deliberately indifferent to Plaintiffs' constitutional rights and he did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

## ATTORNEYS' FEES

58.     Plaintiffs are entitled to recover attorneys' fees and costs to enforce his Constitutional rights and under 42 U.S.C. Sections 1983 and 1988.

## JURY TRIAL

59.     Plaintiffs request a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A.     Enter judgment for the Plaintiffs and against Defendants holding them jointly and severally liable;

B.     Find that Plaintiff is the prevailing parties in this case and award attorneys' fees and costs, pursuant to federal law, as noted against all defendants;

C.     Award damages to Plaintiff for the violations of their rights under the 1st, 4th and 14th Amendments and under state law;

D.     Award Pre- and post-judgement interest;

E.     Award Punitive damages against each and every individually named defendant, and

F.      Grant injunctive relief preventing the City of Houston from kettling and falsely arresting peaceful protestors, and

G.      Grant such other and further relief as appears reasonable and just, to which plaintiff show himself entitled.

Respectfully Submitted,

KALLINEN LAW PLLC

*/s/ Randall L. Kallinen*
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone:  713/320-3785
FAX:        713/893-6737
E-mail:     AttorneyKallinen@aol.com

Alexander C. Johnson
State Bar of Texas No. 24123583
U.S. Southern District of Texas Bar No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone:  573/340-3316
FAX:        713/893-6737
Email:      alex@acj.legal

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on May 20, 2022 I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

*/s/Randall L. Kallinen*
Randall L. Kallinen